Good morning, Your Honors, and may it please the Court. My name is Salas Kim, and I'm here on behalf of Petitioners Saria Lizeth, Miranda Perez, and her three children. I'd like to reserve six minutes for rebuttal. Would you move the mic down a little bit? Thank you. Just keep an eye on the clock. This case ultimately hinges on what motivated Petitioners' primary persecutor, Tusa, a mafia leader in Mexico whose escalating campaign of violence against this specific family over the course of approximately 18 months forced them to flee to the United States in fear of their lives in October of 2013. Relying solely on its no-nexus finding, the agency denied both asylum and withholding, but in doing so committed factual and legal errors. In further denying protection under CAT, it committed additional legal errors. Turning first to the issue of nexus, the agency found that what this family experienced was mere ordinary crime through extortion or retribution as opposed to any violence based on the family's relationship to Fernando, who was Saria's husband, the children's father figure, the center of the family-based particular social group, family members of Fernando, and who was the very man that Tusa himself admitted to killing in September of 2012. Not only did Tusa brutally kill Fernando, who was found with his hands and feet bound, his head covered with shots to the head and abdomen, Tusa regularly issued death threats against the family, shot at the family home twice, once in the middle of the night and the other while the three children and grandmother were inside the home, killed Fernando's nephew, and then further physically accosted Saria in the street, grabbing her by the neck, pulling his weapon, admitting to murdering Fernando and then threatening her life. I'd first like to briefly address the BIA's language itself on page five of the record. You'll see exactly how the BIA had treated this. It's stated, quote, retribution or retaliation is harm inflicted only for personal reasons, not on account of a protected ground, and therefore would not constitute persecution for asylum purposes. If you read that in isolation, it sounds like that's not correct. That's correct, Your Honor. Should it be read in full context of the entire paragraph? When you do look at the rest of that paragraph on page five of the record, you will see, however, right before it does speak about extortion separately and it does say the language that is missing from this specific sentence. So if I could, Director, extend that. Well, it could have been a little bit. It struck me that if you looked at that paragraph in full context, that that statement that you read was just referring to the particular facts of this case. Not necessarily, Your Honor. Again, I would like to ask you this. Could the BIA read it? Is that the way the I the Is that a reasonable interpretation for what the BIA did? No, Your Honor. That would not be a reasonable interpretation. And again, I would like to place that within the context of that paragraph. So if you just look a couple sentences right before, when it speaks about extortion specifically, it does say extortion without a demonstrated nexus to a protected ground. There's absolutely no reason to see how that wouldn't have been also placed within this sentence. And so if you read that sentence, it is plainly wrong as a matter of law. And goes against this court's precedent, specifically in Carr. But what about the sentence before the one that extortion without a demonstrated nexus, where it refers to the IJ's factual finding that the extortionist was only motivated by the prospect of pecuniary gain? Although it may seem that the BIA had adopted that factual finding from the IJ, it did add this additional sentence, making it a separate legal error. Even if Your Honors do not believe there is a legal error, there is the actual factual error that occurred given the record. Well, I understand you have an argument about the factual error, but before we get to that, I mean, if that's how we read the sentence I just read, as adopting a factual finding that he was motivated only by the prospect of pecuniary gain, if that's what they found, would you agree on that fact that there's no nexus? If what was found is there was absolutely no evidence of a family-based motive here or any animus against the family, then there would be no nexus because there's no protected grant. Right, but isn't that what it means? I mean, if he's only motivated by the prospect of pecuniary gain, then he's not motivated by anything else, right? I mean, they may be wrong, but that's what that sentence means, isn't it? I do see exactly how you would read it that way. However, I think it is important to look at the specific facts of this case because it does compel the contrary conclusion that a family-based motive did exist. So if I could turn to the specific parts of the record. To address the fact that this was not pure extortion, the family didn't have money to afford the quota payments at times, and Tusa did know this, but the violence itself did not cease. Furthermore, Sari had lived in this neighborhood of 500 people, all of whom she had known since she had lived there for almost 23 years at that point, her entire life, and there was no knowledge or no one else in the neighborhood had been attacked, even remotely close to this level of severity. No other homes were shot at, no other family members were killed from other family units. This was very clearly a specific targeted campaign against Sari and her family based on their relationship to Fernando. You will see that there is clear escalation in the record, specifically when Tusa had killed Fernando in September of 2012. You will see that right after that, days after he had approached Sari, threatening her directly and stating that she had, quote, seen what he was capable of, that's on page 158, or 133 and 158, and, quote, she had already seen what could happen, and that's clearly referring exactly to the incidents that occurred days before. Fernando had been arrested with no explanation by the local police. Just hours later, he was found dead. He had gone out searching for work that day, and Sari had received a ransom call. She told the caller that she would get the money for the release of her husband. This extortionist did not wait for the money and instead killed Fernando, and so that shows that this couldn't have just been mere extortion or even retribution at that point. You will also see further in June 2013 when Tusa had then approached Sari once more, grabbing her by the neck. Let me ask you this. So what if the BIA just determined everything you just said just isn't enough? There is substantial evidence. When we look at all the evidence in the record, it's substantial, and it supports that, what's his name? Tusa.  His only motive was retribution. That would not be a proper reading, and that's exactly why here, given the record, our case is most similar to Corpano Romero, a recent case from this court. The facts are almost virtually identical. There, it was the mother and son who were petitioners. The father was also the center of the family-based particular social group. The father was killed by these gang members. The gang members were then imprisoned, and once released, they sought out the family, and this court found that there were both a family-based protected motive as well as either retaliation or trying to recruit the son there. Here, this is very similar. You'll see that Tusa killed Fernando, was briefly detained by the military for just a few months, once released, immediately sought out Seri, and then threatened her in the same way. And I think the nature of those threats are quite important. So there, this court did find that the fact that it was the same persecutor, the same people who were in prison and then were released and then sought out the family, that was powerful evidence coupled with also the death threats that were being issued. So let me ask you this. So it appears that the board somewhat conflated the standard for withholding along with its determination on asylum. Yes, Your Honor, that is- What do we take of that? The BIA itself actually did not even conduct a separate analysis for withholding, a finding that what it had stated under the asylum standard was enough. But our position is also that it did not properly conduct the mixed motives analysis, so it didn't even conduct the analysis for asylum correctly, since it did just preclude a protected ground based off of its conclusion of extortion or retribution. But for withholding specifically, there is enough evidence in the record, and we only need some evidence that is not unambiguous, and that's the standard there. And there is sufficient, more than enough- This gets me to the whole idea of whether or not you could prevail on withholding alone, or whether that's possible without setting aside the holding on asylum. Does that make sense? Yes, however, we would request that the court remand to redo both, to properly conduct the analyses under both separate nexus standards. We do believe that, again, the record here does compel- But with respect to asylum, would it be for legal error, or lack of substantial evidence? We do posit that there are both legal and factual errors here. If you'd like to remand it for the legal error to just redo the entire analysis, or if it's under factual error and substantial evidence doesn't support the agency's finding, we would request that this court find for nexus, and then remand for the remaining asylum elements there. And why is the difference in the nexus standard for withholding an asylum matter here? I mean, it matters in cases where they say, well, you know, there's some evidence of nexus, but not enough, and then the difference matters. But here, the board, rightly or wrongly, seems to have thought that there was no evidence of any nexus to a protected ground. So, given that finding, then their sloppiness in describing the withholding standard doesn't really matter, does it? If it were true that the record contained no evidence of a family-based motive, then it is true that withholding doesn't require a separate analysis. However, our position, again, is that the record does compel the contrary conclusion, and there is, again, some evidence, all of which I've mentioned thus far, that does require the agency to have done a separate withholding analysis. So, that part is both because of the record, and also because the BIA, in its language, in its decision, just completely ignored the withholding standard entirely, and that is unacceptable in this case. All right, we've taken you into your rebuttal time, so we'll let you save the rest of the time. Thank you. Ms. Aquino. Good morning, Your Honors. If I may please the Court, Joanna Bell Aquino for the respondent. As this Court has recognized, to meet your burden for asylum and withholding, you need to show that the harm that you experience and fear would be on account of a protected ground. And here, Ms. Miranda was quite clear in her testimony. She said it at least five times, that this was all about money. And I will start with page 122 of the record. She said that that's when, initially, TUSA began charging them money, is because they didn't. I'm sorry, what page are we on? 122 of the record, Your Honor. She explained that when they began selling vegetables, that's when TUSA began charging them money. And then at page 160, she explained that while he was known for charging many other people in the community for quotas, he was particularly interested in her because she was selling vegetables. And then at 122 to 123, she says, when they weren't able to pay TUSA anymore, he responded by threatening them and told them that they had to pay him. Then at 133, after Fernando's death, she says that TUSA had come to confront her and said that she had seen what he was capable of and that he wanted money for the quota. And finally, at 136 to 137, after he was released from detention and confronted her, he said to her to get the money that she still owed him. And during all of these encounters, not once does she mention that TUSA had an animus against Fernando's family members. And in every one of these encounters, he brings up money. And so first and foremost, that is the primary motivation he had for going after this family. And then it does turn into revenge at one point because he does mistaken, for her testimony, Ms. TUSA mistakenly believes that she may have reported him to the military and caused his arrest. But even in that encounter, when she is asked by her attorney what TUSA meant when he said to her that she would pay for it, she said that I was gonna pay for the months that he was detained. There is no mention, again, of an animus to Fernando's family in any of these encounters. And if she was found credible, and if we're to take her for her word, then this is all about family, or this is all about money and revenge. But there was other evidence that he threatened other family members, her son. He shot up, or he or his associates, or together, shot up the house while they were in it. Yes. Is that right? Yes, but again, Your Honor, that doesn't necessarily show that this was all about family. By her own words, this was all about money. If I'm not mistaken, his murder was after several of the threats, is that right? After the first shooting, yes. After the first time their house was shot up. That was allegedly killed while he was out looking for work. Right. But again, there's nothing in that encounter that suggests that- Well, Tusa, we don't know. I mean, there may have been other reasons why Tusa killed her husband. Right, and that's precisely the issue here, Your Honor. The record needs to compel that this was all about family if they wanna meet their burden here, but we don't know exactly why Fernando was killed. They say that he was out looking for work and that he was last seen in the company of police officers, but we don't know what happened in that time that led to his death. We don't know exactly what was the reason that he died. She received a ransom call from an unknown person, supposedly asking for a ransom for the release of Fernando, but we don't know ultimately who kills him and how it comes about. So at the end of the day, the only evidence in the record that- You take from his comments that he acknowledged that he was the one who either killed or had her husband. Sure, I mean, we can take enforcement- He made some pretty direct statements, too. Right, right, and we can take from those that we can agree that he may have taken credit for the murder, but again, we don't know. There's nothing in his taking credit that references the family, again. Like, this is not like in, I know my colleagues had mentioned Corpaino Romero, but this is a very distinguishable case from there where there was direct evidence that the gang members that were targeting Corpaino Romero's son in that case investigated him for eight years, and when they confronted him face-to-face, they called him a very derogatory term while referring to him as the son of Carlos, and we don't have any evidence of that in this case here. I think this case is actually more analogous to Rodriguez-Zuniga, where Ms. Rodriguez, while she was coming out of a bank, was extorted by an extortionist who demanded that she give her money, and when she refused, the extortionist said, I'm gonna go after your son, and that's exactly what we have here. They used the family as a pressure point to get what they wanted. They referenced the family as a pressure point to get the money, or to, yes, to try and get them to pay the money that Tusa believed that he owed, but at no point do they reference any animus towards Fernando's family, and I think it actually undermines their claim that Ms. Miranda had said that Tusa was known in the community for charging other people, and she's never made the claim that those other people in the community were somehow related to Fernando, or that he had a family. So you don't think the shooting of the house and the other circumstances that they point to is just no evidence that family motive might have been in? I don't think it, Might have been a factor? I think, Your Honor, I think your repeated interest in them does not, is not the same as Nexus, and just, and because, and while it shows that he's, How about for purposes of withholding of removal? Well, even for withholding of removal, From the lower, it's not a central, you don't need a central reason, you need a reason. Right, Your Honor. But you definitely need to hire a burden of proof. Yes, Your Honor, and I understand that the petitioners are making the argument that there should have been a mixed motive analysis done here, but this is not the case where a mixed motive analysis should have been done and was, and the agency failed to do so. This is a case where here, the agency specifically acknowledged that there are three potential motives in this case, and I would point the court to page 52 first of the, and that's the IJ decision. IJ clearly considered three potential motives when she says, they fear that based upon them being a part of Fernando's family, the fact that Tusa believes the lead respondent reported him to the military, which resulted in his arrest, and her failure to continue to pay the extortion fees that resulted in the threats the respondent suffered and their ultimate decision to flee the country. So to be clear, she considered family as a potential motive, revenge for reporting, and their failure to pay the extortion, but with the, based on the evidence before her, the immigration judge concluded that, really, the evidence supported the conclusions that only two of those motives, revenge for reporting and failure to pay extortion, were what, were the reasons why Tusa was motivated in targeting them. And the board, in reviewing this decision, again, as was noted during the opening and on pages four to five, the board also clearly acknowledged that the Petitioners here were claiming that family could be a basis for, for asylum or withholding of removal here, but the record did not support that, simply because, for the reasons that I stated, every time she had an encounter with Tusa, she says that it was about money. Okay, and your friend began by reading the last sentence of that paragraph that carries over from four to five, retribution or retaliation is harm inflicted only for personal reasons, not on account of a protected ground. Do you agree that, if we were just looking at that in isolation, that that is an overly broad statement? I think if you look at it in isolation, in just that one sentence, then it is problematic. But the problem is here, is that we can't just look at this in isolation. It's clearly the context says that they were considering that family could potentially be a motive here, and the immigration judge was quite clear about that too. And it's, and, you know, like if all we were to, if we were to just to look at that in isolation, it's, that they would themselves also be ignoring all of the evidence in the record that says that this is about other things too. So, you know, the, so, at the end of the day, the record here is quite clear that there was no need for a mixed motive analysis here. There was no need for, for being quite clear about separating the standards for asylum and withholding of removal, because as was stated, that even if the motive may not have been central, like, or a reason, it doesn't matter because the record here supports the conclusion that this was never about a protected ground. This was only about retribution and money. So. So would you say it's just harmless error in your view? I would say that, yes, it is harmless error in our view, that if, that just because the agency didn't necessarily repeat the language of Barajas-Romero, of the A reason, it doesn't necessarily mean it didn't do that correct analysis. Right, but under withholding, all you need is one A reason. Right. Not a central reason. Right. And it doesn't appear that they considered that. Well, it. It just says, having failed to meet the higher burden of proof of asylum, respondent cannot meet the higher burden of establishing a clear probability of persecution for withholding. Doesn't say, well, here's, we look at Barajas, I mean, there, here are three reasons. There's a different standard for withholding, and they didn't satisfy it. They just said, they didn't, because he didn't establish asylum, they didn't establish withholding. But again, Your Honor, like. You have to read a lot into it to see, to think that they considered that. Respectfully, Your Honor. Go ahead, sorry. Respectfully, Your Honor, I would disagree, because again, as the record clearly shows, the agency specifically found that family was not a motive here. So there was really no need to do a separate analysis on withholding of removal, because it was never A reason, much less one central reason here. And substantial evidence supports their determination that this is all about money and retribution, considering their own testimony. But why isn't retribution part of the family analysis? I'm not quite sure I understand. Well, at the end of the day, there's, by her own words, they've, she's, Tusa has never told, never referenced the family in. No, I understand your argument, but I mean, taking retribution alone, why can't that be considered as part of the family unit? There's retribution against somebody, and it looks like it's a family unit. She, he was seeking retribution, Tusa was specifically seeking retribution for the fact that he was arrested. The fact that she, that Ms. Miranda may have been related to Fernando had nothing to do with this. If she had just simply reported him and he was not aware of a family motive, I think given his interest in them, I think it would also, it demonstrates that he would have gone after her regardless of that family relationship. It's, the family relationship really here was just a means to an end of getting what they wanted, or for Tusa to get what he wanted, but it had nothing to do with him actually going, his motivation for going after them in the first place. But I guess, I think, in some contexts, you would agree, I take it that a, you could have retribution against a family, right? I mean, if you, like a blood feud is all about retribution against somebody because of their status. Yes, and that's exactly what happened in Corpaino Romero, but that's not the facts that we have here, Your Honor, and that's, and here, again, there was absolutely no reference to family. There was no evidence like in Corpaino Romero that they went and investigated this family or even made any sort of reference to their familial relationship. It was always when the children were brought up or when Fernando or Ms. Miranda herself was brought up in these threats, it was always a pressure point to get them to get what he wanted. It was always about to get the money or to get the retribution. It wasn't because, he never said that I specifically had something against Fernando and anyone related to him. And so, because substantial evidence supports the agency's determination, we would ask that the petition for review be denied on these grounds. Thank you. We'll give you six minutes. Thank you, Your Honors. Ms. Malley? Harshini Malley, representing petitioners on rebuttal. I'd like to briefly address two points, first regarding Nexus and second, briefly regarding the agency's errors under CAT. First, my colleague on the other side asserts that this has to be all about family, but this is precisely what the agency did wrong. It precluded the family-based motive based on its findings of extortion and retribution, and that is exactly what's wrong with the agency's analysis here. The family-based motive need not be the only central reason. It just must be one central reason. And here, the evidence that my colleague outlined shows that it at least met the one central reason standard. Even if this Court is not convinced that substantial evidence supports that the family-based motive is one central reason, the agency separately failed by not even applying the weaker a reason standard for withholding, as Your Honors recognized. Here, under the withholding standard, the error is committed exactly as in Garcia. The agency here committed the same reasoning as in Garcia by failing to even apply the separate standard and rather reasoning based on the overall burden of likelihood of future persecution, which the agency did not even reach. Here, there is at least some- We didn't need to do that because the board found that there was only one reason in play here, and that was money. Your Honor- What do you say about that? Your Honor, substantial evidence does not support that there is absolutely no evidence of nexus, as Your Honor- On the family. Exactly, for the family-based motive. For example, on page 139 to 140 of the record, Saree testified that, since he had killed my husband, I had reported him to the military. This shows that the retributive motive is linked to the family-based motive, and therefore, as the agency recognized, there was a retributive motive, but there was also a family-based motive. So it is incorrect to uphold the agency's decision that there is no evidence of nexus. For remand under this withholding error, the standard is that the evidence is, quote, not unambiguous as to the motive. There in Garcia, this court did not separately apply the a reason standard to the evidence. Rather, it looked at whether there was some evidence that required the agency to then properly apply the withholding nexus standard to the evidence. And this is exactly what this court should do here.  If there are no further questions regarding nexus, I'd like to turn briefly to the agency's errors regarding Catt. First, Saree properly exhausted all of her arguments under Catt. And the agency committed several independently reversible legal errors under Catt. It failed to consider highly probative evidence, including the country conditions reports in its entirety. In Aguilar-Ramos, this court recognized that country conditions evidence is given special weight in removal proceedings, and that this error requires remand for the Catt claim. Second, the agency failed to consider evidence of the police's detention of Fernando hours before he was killed. And this is especially important in light of the fact that in the months leading up to this, excuse me, Saree witnessed to subbribing police in broad daylight. And this evidence is important to the government acquiescence analysis. Does the, I mean, even if we agree with you on acquiescence, does acquiescence matter unless you can also overcome the finding of ability to relocate? Your Honor, because the agency erred here in its finding of acquiescence, this court should remand for the agency to properly do the entire likelihood of future torture analysis. But why? I mean, if the finding of ability to internally relocate stands, why does the error on acquiescence matter if there is an error? Your Honor, the Catt regulations require that the agency look at all of the elements and all of the evidence together. And we also, our position is that the agency also erred in its internal relocation analysis by failing to consider evidence. I see my time has lapsed. Thank you, Your Honors. All right. Thank you. Thank you, Ms. Molley. And Ms. Kim, you're representing Petitioner Pro Bono and the court thanks you for your service. We thank all counsel for their helpful arguments and the case is submitted.
judges: THOMAS, PAEZ, MILLER